UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 06-CV-108-GFVT

CATHY WADSWORTH                                                                                    PLAINTIFF

VS:                      **MEMORANDUM OPINION AND ORDER**

COMMONWEALTH OF KENTUCKY, ET AL.                                             DEFENDANTS

Currently before the Court for consideration are the following pleadings:

(1) The "Motion to Dismiss" [Record No. 9], filed by counsel for three defendants in this proceeding: the Commonwealth of Kentucky; the Kentucky Department of Corrections ("KDOC"); and KDOC Commissioner John D. Rees;[1] and

(2) The "Response" [Record No. 19] filed by counsel for Cathy Wadsworth, the plaintiff, who is presently confined at the Otter Creek Correctional Center ("OCCC"). The plaintiff is represented by counsel.

<u>The Complaint  [Record No. 1]</u>

The plaintiff alleges that the named defendants have violated her right to equal protection and due process of the law, in violation of the Fourteenth Amendment of the United States Constitution. She further alleges that the defendants have violated not only the KDOC's Corrections Policy and Procedure ("CPP") §18.5, which establishes custody and security

---

[1] There are three other defendants in this action: (1) the Otter Creek Correctional Center ("OCCC") which is located in Wheelwright, Kentucky ; (2) OCCC Warden Joyce Arnold; and (3) the Correctional Corporation of America. These defendants are represented by private counsel. They have not filed a motion to dismiss.

guidelines for state prisons, but also CPP 18.7, which governs transfers of state prisoners.

Plaintiff alleges that she possesses a right to be placed either in a halfway house or at the Kentucky Correctional Institute for Women ("KCIW"), a facility operated by the KDOC. The plaintiff claims that the KDOC discriminates against female inmates confined in the OCCC, alleging that inmates in the KCIW are more readily placed in community custody facilities.

Specifically, the plaintiff contends that although she has achieved a community custody security level, KDOC officials refuse to place her either in the KCIW or in a halfway house. She further contends that a specific KDOC employee, Tammy Howard, caused the plaintiff's criminal co-defendant to be preferentially placed at the KCIW. Plaintiff alleges that this action essentially created an "artificial conflict" which allowed Howard to deny the plaintiff the sought-after placement at the KCIW.[2]

Plaintiff alleges that due to personal grievances and jealousy toward her, she is being held at the OCCC and, as a result, she is suffering medical and psychological problems. She seeks (1) a declaration that the KDOC's transfer policy (CPP 18.7) is unconstitutional; (2) an injunction ending the KDOC's discriminatory practices; and (3) nominal damages, punitive damages, and attorney fee costs.

<u>Defendants' Motion to Dismiss  [Record No. 9]</u>

The defendants assert several grounds for dismissal. The first ground is that the Commonwealth of Kentucky and its agencies have Eleventh Amendment immunity with regard

---

[2] On this issue, the plaintiff alleges that Howard is refusing to transfer her (plaintiff) for punitive reasons, in violation of CPP 18.7.

to both her claim for injunctive relief and her claims for damages. The defendants cite *Cowan v. University of Louisville School of Medicine*, 900 F.2d 936, 940 (6th Cir. 1990); *Quern v. Jordan*, 440 U.S. 332, 337 (1979); and *Hutsell v. Sayre*, 5 F.3d 996 (6th Cir. 1993), among other legal authorities.

Second, the defendants argue that neither a state nor a state official is a person for purposes of a §1983 action, *Will v. Michigan Dept. Of State Police*, 491 U.S. 58.71 (1989). They argue that pursuant to *Kentucky v. Graham*, 473 U.S. 159 (1985), a state official sued in an official capacity for monetary damages is absolutely immune from liability under the Eleventh Amendment.

Third, the defendants claim that the plaintiff has failed to allege what, if any, specific action that KDOC Commissioner John Rees personally undertook which caused the plaintiff's alleged injuries. They claim the plaintiff has made only conclusory allegations against Rees which are inadequate to state a claim under §1983. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Fourth, the defendants characterize the claims against Rees as falling under the doctrine of *respondeat superior*. They argue that *respondeat superior* (supervisory liability) does not create liability under 42 U.S.C. §1983. *Monell v. Dept. Of Social Services*, 436 U.S. 658, 691-95 (1978); *Lillard v. Shelby County Bd. Of Education*, 76 F.3d 716, 727 (6th Cir. 1996).

Fifth, the defendants cite numerous cases for the proposition that inmates have no liberty interest in a particular housing assignment, community placement, or security classification. The defendants cite numerous cases, including *Moody v. Daggett*, 429 U.S. 78 (1976), and *Sandin*

*v. Conner*, 515 U.S. 472 (1995), in support of this argument.

Sixth, the defendants argue that the plaintiff has failed to demonstrate that she is in a protected class for purposes of asserting a valid equal protection claim. The defendants argue that inmates are not in a protected class for equal protection purposes. They further argue that even if the plaintiff could show that she had been treated differently than other inmates, the denial of transfer request was rationally related to a legitimate penological interest.

Seventh and finally, the defendants argue that because all federal claims should be dismissed, the pendent state law claims should also be dismissed.

<u>Plaintiff's Response [Record No. 19]</u>

The plaintiff raises several arguments in her response to the defendants' motion. First, citing *Dept. Of Corrections v. Furr*, 23 S.W.3d 615 (Ky. 2000), she argues that because the Kentucky Civil Rights Act, K.R.S. Chapter 344, provides a limited waiver for causes of action against the Commonwealth for violations of the Act, Eleventh Amendment immunity does not preclude recovery against the Commonwealth of Kentucky and its agencies in this case [Record No. 19, pp.1-2]. She asserts that because she is alleging violations of her constitutional rights, the defendants should not be able to invoke Eleventh Amendment immunity [*Id.*, p. 2].

Second, the plaintiff argues that "women prisoners are treated differently *whether* they are incarcerated in the state prison or a privately owned prison." [Record No. 19, p. 2 (Emphasis Added)][3] The plaintiff states on the next page of her response that a class of prisoners--those

---

[3] By the plaintiff having used the word "whether" in this statement, the Court was not entirely clear about her meaning. One interpretation of this sentence could be that female prisoners are treated differently than male prisoners. That interpretation is somewhat at odds with the equal

inmates confined in the OCCC who have reached "community custody" status--receive less favorable treatment than prisoners confined in state-owned and -operated prisons [*Id*., p. 3]. She claims that "every community custody inmate at Otter Creek Correctional Center is spending more time waiting to be transported to a halfway house than the average prison {sic} at the state owned and operated prisons." [*Id*.].

The plaintiff argues that on the issue of halfway house placement, the defendants have not provided a rational basis for the alleged different treatment between OCCC inmates and inmates at the state-run prisons. The plaintiff concludes that "These allegations can be shown if this case is allowed to proceed and discovery is allowed." [*Id*.].

Third, the plaintiff acknowledged that Defendant Commissioner Rees did not participate in, and had no personal involvement with, the denial of her request to be transferred to the KWIC. Plaintiff maintains that Rees was named in his official capacity because ". . . in his official capacity he promoted [the] regulation, which violated the prisoner's right." [*Id*., p. 3]

Fourth, the plaintiff alleged that she had the right to be treated as fair and equally "as the other inmates in the system." [*Id*.]. In addition to her claims that OCCC prisoners are generally denied access to halfway house programs far more often than prisoners in state-run prisons, the plaintiff again reiterated that she was denied the transfer to the KWIC because a conflict existed

---

protection claim set forth in the complaint. There, the plaintiff alleged that female prisoners who are confined in the OCCC are treated differently than the female prisoners who are confined in the KWIC. [Record No. 1, p. 5, Count I)
    Later in her response to the summary judgment motion, the plaintiff explained her meaning by stating that "prisoners in the privately operated state prisons are treated differently then {sic} the prisoners in the state owned and operated prisons." [Record No. 19, p. 3] That allegation could arguably apply to both male *and* female prisoners, as prisoners of *both* sexes are confined in both privately operated state prisons and in state-run prisons.

at the prison [*Id*., p. 3-4]. She claims that the KDOC created the conflict then "used the conflict to punish the plaintiff, which is in clear violation of the KDOC's own policy." [*Id*., p. 4]

Fifth, the plaintiff addresses the defendants' argument that prisoners enjoy no constitutionally protected right in specific housing assignments or to specific security classifications. She gives somewhat contradictory responses. At first, the plaintiff states that the "Defendant correctly contends that the Plaintiff's allegations that particular security classification, housing or transfer are not Constitutional {sic} protected rights." [*Id*., p. 3] Later in her response, the plaintiff adopts a different viewpoint, stating as follows:

> "the Plaintiff does contends that classification of prisoners does create some liberty interest in the classification. Depending on your classification, the level in which you are classified will determine which activities an inmate can participate. . .
>
> The KDOC has produced guidelines and criteria that give inmate an insight of what the KDOC expects how an inmate is supposed to behave in order to achieve a certain classification level. Plaintiff has gone above and beyond in meeting the KDOC guidelines and her denial of classification by the KDOC without reason creates and issue that this Court should decide.

[Record No. 19, p. 4]

In concluding her response, the plaintiff argues that the decision to deny her either placement in a halfway house or a transfer to the KWIC has in fact resulted in the type of "atypical and significant deprivation" contemplated in *Sandin v. Conner*.

## Standard of Review

Fed. R. Civ. P. 12(b) provides for the dismissal of claims and parties for seven listed reasons. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in

6

support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir.2001). In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice. *Id*. at 360-61; *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003), *cert. denied*, 540 U.S. 1183, 124 S. Ct. 1424 (2004).

Well-pled allegations must be taken as true and must be construed most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).

Finally, the Court is aware that the incarcerated plaintiff is represented by counsel. However, where a complaint seeks redress from a governmental entity or an officer of a governmental entity, a district court is authorized to dismiss a complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief can be granted ." *See* 28 U.S.C. §1915A(b)(1). With these considerations in mind, the Court will address the defendants' various legal arguments and the plaintiff's responses.

## DISCUSSION
### 1. No Class Action

The plaintiff alleged in her complaint, and in her response to the defendants' motion to dismiss, that prisoners confined in the OCCC must wait longer to be placed in community half-

7

way houses than prisoners confined in state-operated prisons. As an initial matter, the Court disagrees with the plaintiff's claim that she represents the "class" of female prisoners who are confined in privately operated state prisons.

Plaintiff Cathy Wadsworth is the one and only plaintiff in this §1983 action. There has been no certification of a class in this action, and there has been no request to certify this case as a class action under the framework of Fed. R. Civ. P. 23(a).[4] No other female prisoners have alerted the Court as to an interest in this proceeding. Lacking involvement by other would-be plaintiffs, the Court simply cannot view this as a class action proceeding. The issue before the Court is restricted solely to evaluation of the merits of this plaintiff's equal protection claim.

## 2. Equal Protection Analysis

"To state a claim under the equal protection clause, a §1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1111 (6th Cir. 1995) (citing *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). In order to establish a violation of the equal protection clause of the Fourteenth Amendment, an inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of officials. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (citing *See Village of Arlington Heights*

---

[4] Under Fed. R. Civ. P. 23(a), four prerequisites must exist for class certification: (1) the class must be so numerous that joinder of all members of the class is impracticable; (2) common questions of law or fact must be present among the class; (3) the claims of the representative party must be typical of the class; and (4) the representative party must be able to fairly and adequately protect the interests of the class. *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000), *cert. denied*, 531 U.S. 1148, 121 S. Ct. 1088 (2001).

*v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66, 97 S. Ct. 555, 563-64, 50 L. Ed. 2d 450 (1977)).

When an equal protection challenge is raised and no fundamental right is involved, and the plaintiff does not allege that he is a member of a suspect class, the challenged "provisions will pass muster if they are reasonably related to a legitimate government interest." *Taxpayers United, et al. v. Austin, et al.*, 994 F.2d 291, 297 (6th Cir. 1993) (citing *Moore v. City of East Cleveland*, 431 U.S. 494, 498 (1971); *Zielaskko v. Ohio*, 873 F.2d 987 (6th Cir. 1989)).

As the defendants correctly note, inmates are not a protected class for purposes of an equal protection analysis. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). An inmate cannot establish a violation of his equal protection rights simply by showing that other inmates were treated differently. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 114 S. Ct. 127 (1993). *See also Mahoney v. Carter*, 938 S.W.2d 575, 577 (Ky. 1997) (difference in treatment of incarcerated persons does not constitute a denial of equal protection of laws, absent a showing of suspect classification). A prisoner must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Id.* (citing *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988)).

Here, the plaintiff has not shown treatment based on a suspect classification. The plaintiff is an inmate in the OCCC, a privately operated prison. Her claim is that she has been delayed or denied placement in a halfway house or other community-based program, despite the fact that she states that she has met the KDOC's eligibility requirement for such placement. The plaintiff's claim is not based upon her membership in a protected class such as her race,

9

religious affiliation, or her gender. Her claim is merely based upon her status as an inmate at the OCCC, awaiting a hopeful transfer either to the KWIC or a halfway house.

Under these facts, the KDOC's policies governing classification and transfers (CPP 18.5 and CPP 18.7) are not subject to review under a higher (or strict) level of judicial scrutiny. The plaintiff has not stated a cognizable equal protection claim under the Fourteenth Amendment. That allegation will be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); 28 U.S.C. §1915A(b)(1).

### 3. Due Process Analysis

The plaintiff's essential complaint lacks merit for another reason. The plaintiff wants to be placed in a halfway house. She alleges understandable frustration over being denied such placement thus far, even though she apparently meets the KDOC's criteria for placement in a "community-based program" as defined in CPP 18.5, II (B)(1). Unfortunately for the plaintiff, she simply has no protected liberty interest in such placement. This is so regardless of the fact that she may satisfy the KDOC's criteria for placement and regardless of the fact that she alleges that a KDOC employee harbors some type of personal animosity towards her.

Due process rights are only triggered by the deprivation of a legally cognizable property interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). Thus, the plaintiff must establish that she has a legally protected interest in being placed in a halfway house. Unfortunately for the plaintiff, prisoners have no constitutionally-protected liberty interest in being transferred to a halfway house. *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 410-11 (3d Cir.1999); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir.1996); *Brennan v.*

*Cunningham*, 813 F.2d 1, 5-6 (1st Cir.1987).

Likewise, prisoners simply have no constitutional right to other programs, such as vocational training or rehabilitative programs, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), or prison jobs. *See Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989), and *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49-50 (5th Cir. 1995) (Bulger's termination from his UNICOR job and reassignment to a non-UNICOR job did not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life).

Benefits afforded under these programs, and state correctional policies which authorize-- but do not *mandate*--early release to halfway houses are considered privileges afforded to prisoners and not constitutional rights.[5] *Codd v. Brown*, 949 F.2d 879, 882 (6th Cir. 1991). *See also Canterino v. Wilson*, 869 F.2d 948 (6th Cir. 1989) (prisoners did not have liberty interest in study and work release programs, or in application of classification system, because Corrections Cabinet has always had complete discretion to decide whether to grant study and work release, and classification statute was expressly drawn to commit decisions regarding classification to Secretary of Corrections Cabinet), and *Lang v. Rees*, 2005 WL 387246, *2 (Ky. App. 2005) (Only Westlaw citation available) (Corrections was not required to award "work for time" credit under K.R.S. 197.047 as the statute grants discretion to the KDOC, and the KDOC was therefore free to withhold credit from inmates convicted of robbery in the first degree).

---

[5] CPP 18.5(II)(B) addresses the six levels of custody in state prisons. The first level is designated as "community." *See* (II)(B)(1). This provision employs discretionary, not mandatory language. It states that "an inmate with this custody level *may* qualify for participation in the Community Center Program. If housed in a community center, the inmate *may* participate in community-based programs." (Emphasis Added)

11

Remaining in prison rather than going to a halfway house does not impose "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Asquith*, 186 F.3d at 412 (quoting *Sandin v. Conner*, 515 U.S. at 484). Even cases which evolved before the Supreme Court's *Sandin* decision adopted the viewpoint that prisoners have no inherent constitutional right to placement in any particular prison, security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S. Ct. 1741 (1983); *Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976); *Moody v. Daggett*, 429 U.S. 78, 88, n.9 (1976); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976).

The plaintiff has not established a due process violation under the Fourteenth Amendment. That claim will be dismissed. Fed. R. Civ. P. 12(b)(6); 28 U.S.C. §1915A(b)(1).

4. Eighth Amendment Analysis

*Sandin* undermines the plaintiff's claims under the Eighth Amendment as well. Citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), the Supreme Court held in *Sandin* that the Due Process Clause is aimed at protecting no more than "the most basic liberty interests" in prisoners, and that it will not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates. *Sandin v. Conner*, 515 U.S. at 478.

Under the *Sandin* analysis, housing assignments and classification decisions (such as extended placement in disciplinary segregation and transfers to higher security prisons) have been upheld as the "ordinary incidents of prison life." *See Merchant v. Hawk-Sawyer*, 37 Fed. Appx. 143, 145 (6th Cir. (Ky.), May 7, 2002) (not selected for publication in the Federal

Reporter) (Merchant's maximum security classification, 21-month confinement in the special housing unit and transfer to a more secure facility were simply the "ordinary incidents of prison life" and did not implicate a protected liberty interest). These decisions were far more restrictive than Plaintiff Wadsworth's complaint about being denied transfer to a halfway house. The plaintiff has not alleged the denial of any basic human needs such as water, food, access to the general population, access to religious services, or access to recreational activities. As noted, the law is clear that inmates have no legally protected liberty interest in either the location of their confinement or in their classification and housing status.

Under *Sandin*'s framework, the complaint about being denied transfer to a halfway house does not raise a valid constitutional claim under the Eighth Amendment. The Court will dismiss that claim against these defendants. Fed. R. Civ. P. 12(b)(6); 28 U.S.C. §1915A(b)(1).

### 5. Defendants' Other Legal Arguments

The Court has reviewed the defendants' other legal defenses, specifically: (1) the argument that Eleventh Amendment immunity bars the claims against the Commonwealth of Kentucky and Defendant Rees in his official capacity, and (2) the argument that the doctrine of *respondeat superior* provides no basis of recovery against Defendant Rees under §1983. The Court has rejected the plaintiff's underlying equal protection and due process claims, stemming from the denial of her request to be transferred either to the KCIW or a halfway house. It is unnecessary to address the defendants' other legal arguments.

The claims against these defendants fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); 28 U.S.C. §1915A(b)(1). As the plaintiff fails to state a valid

constitutional claim against these defendants, she is entitled neither to money damages nor injunctive relief against them.  The Court will grant the defendants' Motion to Dismiss.

### 6. Claims Under the Kentucky Civil Rights Act

The plaintiff asserts a claim under the Kentucky Civil Rights Act.  The Court expresses no opinion about the merits of such a claim, other than to say that she must proceed in state court if she wants to advance that claim.  The Court declines to exercise pendent jurisdiction over that state law claim absent any other basis for federal jurisdiction.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130 (1966); *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279-80 (6th Cir.2000).

### CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) The "Motion to Dismiss" [Record No. 9] filed by the defendants, Commonwealth

of Kentucky, the KDOC, and KDOC Commissioner John D. Rees, is **GRANTED**.

(2) The plaintiff's §1983 claims, seeking injunctive relief and damages against the Commonwealth of Kentucky; the KDOC, and KDOC Commissioner John D. Rees, are **DISMISSED WITH PREJUDICE**.

(3) A **Partial** Summary Judgment shall be entered contemporaneously with this memorandum opinion in favor of these named defendants.

This 26th day of October, 2006.



Signed By:

*Gregory F. Van Tatenhove*

United States District Judge